No. 26-1603

In the
United States Court of Appeals
for the Fourth Circuit

Forma AI, Inc.,
*Plaintiff–Appellant*,

v.

Twic, Inc.,

*Defendant–Appellee*.

On Appeal from the United States District Court
for the Eastern District of North Carolina
Eastern Division
(4:23-CV-77-BO)

# Corrected Opening Brief of Appellant Forma AI, Inc.

Christopher S. Edwards
csedwards@wardandsmith.com
Joseph A. Schouten
jas@wardandsmith.com
P.O. Box 7068
Wilmington, NC 28406-7068
Telephone: 910.794.4800
Facsimile: 910.794.4877
*Counsel for Forma AI, Inc.*

# Table of Contents


Table of Authorities .......... iv

Introduction .......... 9

Statement of Jurisdiction .......... 12

Statement of the Issues .......... 12

Background .......... 14

I. Forma is an industry leader in the HR technology market. 15

II. The parties sell related services to the same customers through the same channels. .......... 17

III. Twic rebrands to Forma, bids on Forma's search terms, and confusion follows immediately. .......... 18

IV. Forma sues, and the district court enters judgment for Twic. .......... 22

Summary of the Argument .......... 25

Argument .......... 29

I. Viewing the evidence in the light most favorable to Forma, there is a likelihood of confusion between FORMA.AI and FORMA. .......... 30

A. The Court applies de novo review .......... 33

B. Forma presented sufficient evidence for a jury to conclude that the actual confusion factor weighs in its favor. .......... 33

1. Forma's evidence shows that consumers were confused, and Twic's agents and employees were confused, too. .......... 35

2. If the "confusion rate" were relevant, Forma's evidence shows a rate exceeding 20%. .................... 37

C. Forma presented sufficient evidence for a reasonable juror to conclude that its mark is strong. .................................... 42

1. Forma's mark is conceptually strong. .................... 43

2. Forma's mark is commercially strong. .................... 48

D. The other factors weigh in Forma's favor or at least do not compel summary judgment for Twic. .............................. 52

1. The marks are similar. ......................................... 52

2. Even though Forma's customers are sophisticated, their sophistication does not diminish the likelihood of confusion. ........................................................ 56

3. The district court concluded that the remaining factors either favor Forma or, at worst, are neutral. ........................................................................ 58

II. In any event, the district court erred when it reconsidered its partial summary judgment order and entered judgment in Twic's favor. ............................................................... 62

A. Reconsideration is discretionary, but the district court committed a legal error, which this Court reviews de novo. ................................................................. 65

B. The district court's decision allowed Twic to raise new arguments that it failed to make at summary judgment. ........................................................................... 65

C. The district court misapplied the reconsideration standard to grant Twic's motion. ................................................... 67

Conclusion ........................................................................... 72

Statement Regarding Oral Argument ........................................ 72

Certificate of Compliance ................................................................ 74

Certificate of Filing and Service ..................................................... 75

# Table of Authorities

## Cases

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
944 F.2d 1446 (9th Cir. 1991) .......... 69

*Belk, Inc. v. Meyer Corp.*,
679 F.3d 146 (4th Cir. 2012) .......... 68, 69, 70

*CareFirst of Md., Inc. v. First Care, P.C.*,
434 F.3d 263, 269 (4th Cir. 2006) .......... 43, 48, 59

*Carlson v. Bos. Sci. Corp.*,
856 F.3d 320 (4th Cir. 2017) .......... 65

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) .......... 68

*Charcoal Steak House of Charlotte, Inc. v. Staley*,
263 N.C. 199 (1964) .......... 70

*Clark v. Sweeney*,
607 U.S. 7 (2025) .......... 42

*Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*,
77 F.4th 265 (4th Cir. 2023) .......... 62

*Dewberry Grp., Inc. v. Dewberry Eng'rs, Inc.*,
604 U.S. 321 (2025) .......... 62

*FCOA LLC v. Foremost Title & Escrow Servs.*,
57 F.4th 939 (11th Cir. 2023) .......... 55, 56

*Ga.-Pac. Consumer Prods. v. Von Drehle Corp.*,
618 F.3d 441 (4th Cir. 2010) .......... 68

*Gannett Co. v. Clark Constr. Grp.*,
286 F.3d 737 (4th Cir. 2002) .......... 65

*George & Co. v. Imagination Ent. Ltd.*,
575 F.3d 383 (4th Cir. 2009) .......................................................... passim

*Gilbane Bldg. Co. v. Fed. Rsrv. Bank*,
80 F.3d 895 (4th Cir. 1996) ................................................................ 70

*Grayson O Co. v. Agadir Int'l LLC*,
856 F.3d 307 (4th Cir. 2017) .......................................................... passim

*In re Shell Oil Co.*,
992 F.2d 1204 (Fed. Cir. 1993)............................................................ 55

*In re Vetements Grp. AG*,
137 F.4th 1317 (Fed. Cir. 2025) .......................................................... 47

*Kibler v. Hall*,
843 F.3d 1068 (6th Cir. 2016) ............................................................ 46

*Lamparello v. Falwell*,
420 F.3d 309 (4th Cir. 2005) .............................................................. 42

*Lerner & Rowe, PC v. Brown Engstrand & Shely LLC*,
119 F.4th 711 (9th Cir. 2024).................................................. 34, 35, 37

*Lodestar Anstalt v. Bacardi & Co.*,
31 F.4th 1228 (9th Cir. 2022)............................................................... 69

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
43 F.3d 922 (4th Cir. 1995) ................................................................ 33

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007) .............................................................. 60

*Meyer v. Berkshire Life Ins. Co.*,
372 F.3d 261 (4th Cir. 2004) .............................................................. 58

*Morningside Grp., Ltd. v. Morningside Cap. Grp., LLC*,
182 F.3d 133 (2d Cir. 1999)..................................................... 48, 56, 57

*Nadendla v. WakeMed*,
24 F.4th 299 (4th Cir. 2022) .......... 66

*Perini Corp v. Perini Constr., Inc.*,
915 F.2d 121 (4th Cir. 1990) .......... 56

*Petro Stopping Ctrs. v. James River Petroleum, Inc.*,
130 F.3d 88 (4th Cir. 1997) .......... 33, 34, 40

*Pizzeria Uno Corp. v. Temple*,
747 F.2d 1522 (4th Cir. 1984) .......... 31, 42

*Polo Fashions, Inc. v. Craftex, Inc.*,
816 F.2d 145 (4th Cir. 1987) .......... 68

*Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*,
856 F.3d 416 (6th Cir. 2017) .......... 38

*RCBA Nutraceuticals, LLC v. ProAmpac Holdings, Inc.*,
108 F.4th 997 (7th Cir. 2024) .......... 63

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) .......... passim

*RXD Media, LLC v. IP Application Dev. LLC*,
986 F.3d 361 (4th Cir. 2021) .......... 32, 33, 34, 39

*Sara Lee Corp. v. Kayser-Roth Corp.*,
81 F.3d 455 (4th Cir. 1996) .......... 32

*Select Auto Imps. Inc. v. Yates Select Auto Sales, LLC*,
195 F. Supp. 3d 818 (E.D. Va. 2016) .......... 40

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) .......... 68

*Swatch AG v. Beehive Wholesale, LLC*,
739 F.3d 150 (4th Cir. 2014) .......... 31, 32, 59

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*,
192 F.3d 633 (7th Cir. 1999) .................................................... 42

*Tiffany & Co. v. Costco Wholesale Corp.*,
971 F.3d 74 (2d Cir. 2020) ......................................................... 57

*Two Way Radio Serv. Inc. v. Two Way Radio of Carolina, Inc.*,
322 N.C. 809 (1988) .................................................................. 70

*U.S. Tobacco Co-op Inc. v. Big S. Wholesale of Va., LLC*,
899 F.3d 236 (4th Cir. 2018) ................................................ 64, 67

*U.S. Tobacco Co-op v. United States*,
2019 WL 8323614 (E.D.N.C. Nov. 8, 2019) ................................ 66

*United States v. Duke Energy Corp.*,
218 F.R.D. 468 (M.D.N.C. 2003) ................................................ 63

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
888 F.3d 651 (4th Cir. 2018) ................................................ 31, 33

*Westmont Living, Inc. v. Ret. Unlimited, Inc.*,
132 F.4th 288 (4th Cir. 2025) ..................................................... 61

*Wootten v. Virginia*,
168 F. Supp. 3d 890 (W.D. Va. 2016) ........................................... 64

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................. 22

15 U.S.C. § 1114 ........................................................... 22, 31, 64

15 U.S.C. § 1125 ................................................................. 22, 31

28 U.S.C. § 1291 ......................................................................... 12

28 U.S.C. § 1331 ......................................................................... 12

28 U.S.C. § 1332 .......... 12

28 U.S.C. § 1338 .......... 12

28 U.S.C. § 1367 .......... 12

**Other Authorities**

"Dead Language," Cambridge Dictionary .......... 46

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed.) .......... passim

## **Introduction**

Forma AI, Inc. and Twic, Inc. compete for a select number of companies' limited human-resources budgets. Both sell software as a service, or SaaS, to those companies' HR departments. Both ultimately market their services to departmental decision makers. And both hold themselves out as FORMA. Forma adopted its name in 2018. Twic rebranded in March 2022. Once Twic adopted FORMA, both companies' customers struggled to distinguish between Forma's FORMA.AI mark and Twic's FORMA mark. Conservatively, nearly 15% of the companies' combined customer base struggles to differentiate the two. And Twic's own employees and advisors have acknowledged the similarities are a source of confusion.

Yet when Forma sued Twic for trademark infringement, the district court rejected this evidence. It granted Twic's motion for partial summary judgment, reasoning that Forma cannot show a likelihood of confusion, an essential element of a Lanham Act claim. That decision rests on a series of false premises. First, even though Forma's evidence shows that far more than 10% of the companies' customers are confused, the court concluded that Forma's 29 instances of actual confusion were

not actionable because Twic had received more than 400,000 unidentified emails over 18 months. Even though everyone agrees those emails bear no relationship to Twic's customer base, the district court concluded that those emails each represented a unique opportunity for confusion, rendering Forma's evidence *de minimis*.

The court breezed past this Court's precedent. Even though Twic claimed that its mark was "super memorable," despite the number of businesses using the character string "forma" in their names, for example, the district court concluded that the same evidence weakened Forma's registered FORMA.AI mark. And even though Forma's evidence showed that consumers often see Twic's FORMA mark as plain text, the district court analyzed the parties' marks not as plain text, but complete with imagery that, it said, made them different enough to compel summary judgment.

The district court's summary judgment order is difficult to square with the evidence. True enough, Forma and Twic dispute whether they operate in the same industry. They dispute how their marks are usually seen by the public. And they dispute just about everything else. Yet in granting Twic's motion for partial summary judgment, the court resolved

each of them in Twic's favor, concluding that precedent compelled it to reject Forma's interpretation of the evidence. The court erred in so doing.

For all its errors, the court's summary judgment order did one thing right—it didn't address Forma's state-law claims for unfair business practices and unfair competition. Those claims sound under California and North Carolina law. And Twic's briefing never cited a single statute or case to suggest that it was moving for summary judgment on either claim. With no reason to address those claims, the district court set them for trial.

But the district court compounded its errors when it reconsidered its interlocutory summary judgment order. This Court's law is clear: a district court's power to reconsider its interlocutory orders—to deviate from the law of the case—is circumscribed. The order must be "dead wrong," not just probably wrong and certainly not just questionable. Without citing any case compelling it to change the outcome of its summary judgment order, the district court concluded that Twic had challenged Forma's state-law claims, that those claims all required a likelihood of confusion, and that its summary judgment order compelled

judgment in Twic's favor on those claims, too. The court entered judgment for Twic.

The district court's summary judgment and reconsideration orders are wrong. And its judgment rests on their flawed premise. This Court should reverse those orders, vacate the judgment, and remand for trial.

## Statement of Jurisdiction

The district court had original jurisdiction over Forma's Lanham Act claims under 28 U.S.C. §§ 1331 and 1338, and over its California and North Carolina state-law claims under §§ 1332 and 1367. JA225–26. The court entered judgment for Twic on April 14, 2026, JA2727, and Forma timely appealed on May 12, JA2728–29. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

The district court improperly granted summary judgment to Twic on Forma's Lanham Act claims, concluding that Forma failed to forecast evidence of a likelihood of confusion. It then relied on that erroneous analysis to dispose of Forma's state-law unfair competition claims on reconsideration.

The district court's Lanham Act analysis disregards the summary judgment standard, this Court's precedent, and common sense. Most seriously, the court dismissed Forma's actual confusion evidence as *de minimis* by treating every email Twic received—from customers, spammers, and others—as a distinct opportunity for confusion, even though Twic provided no context for those emails and admitted duplicates. The court also brushed aside the strength of Forma's mark by ignoring both trademark law and Twic's own admissions.

The reconsideration order is similarly flawed. Reconsideration is an extreme remedy, and this Court's precedent teaches that district courts should not reconsider interlocutory orders unless they are wrong on their face. Yet despite precedent leaving open whether Forma's state-law claims could survive without a viable trademark claim, the district court concluded that likelihood of confusion was essential. And to do so, it considered arguments Twic failed to make in its summary judgment motion.

The issues on appeal are:

1. Whether the district court erred in granting Twic's motion for summary judgment when Forma produced evidence of nearly 30

instances of confusion among the parties' roughly 225 customers; Twic's CEO admitted that "forma" in other terms did not weaken Twic's mark; and the identical term FORMA dominates both parties' marks.

2. Whether the district court erred in granting Twic's motion for reconsideration when Twic used that motion to raise arguments it failed to make at summary judgment, and no controlling precedent from California, North Carolina, or this Court foreclosed Forma's state-law claims absent a likelihood of confusion.

## **Background**

"The Wellness Intelligence Company" marketed its software under the initialism "Twic." JA502. But in 2021, it set out to adopt a new identity, JA507–08, eventually settling on "Forma," JA510, and adopting this brandmark:

forma

JA511–12, JA552–556. Three weeks later, in March 2022, Twic publicly rebranded. JA511; JA653. By then, Forma had used its registered character mark FORMA.AI in commerce for years. JA2049. Confusion started within a month of the launch, JA1845–46, and has not stopped.

## I. Forma is an industry leader in the HR technology market.

Forma provides a SaaS, or "software as a service" platform for human resources applications, that companies use to manage sales compensation. JA2048. Since at least 2018, Forma has promoted itself using both the character mark "FORMA.AI," JA2050, and a stylized logo:

FORMA.AI

JA54. Forma uses both the plain text FORMA.AI and its stylized logo interchangeably. JA2050. And its consumers refer to Forma simply as "FORMA." JA227.

Forma targets a niche market of corporate customers with HR needs falling into three categories: (1) more than 500 employees, (2) sales teams exceeding 100 people, or (3) more than 20% annual growth. JA2048. Fewer than 5,000 U.S. businesses fit any category. JA2048. Forma has 23 U.S.-based customers, all large global corporations—a significant achievement in a competitive market. JA2049–50. Beyond growth, Forma emphasizes customer retention and high-quality service. JA2049–50.

Forma's marketing matches its market. Since 2018, Forma has spent around $5,600,000 promoting its mark through its website, trade shows, invitation-only events, monthly panels, blogs, guides, videos, and quarterly meetups. JA2049–50. Each experience targets its niche customers, especially HR professionals who drive purchasing decisions. JA2049–50.

Since its founding, Forma has grown substantially, and so has its marketing spend. Initially, Forma's entire marketing budget topped out at less than $10,000. JA1141–42. But in the fiscal year ending August 2023, Forma spent $1,262,177 on domestic marketing, increasing to $1,726,303 the following year. JA1142. The investment shows: in 2023, Forma was named to Deloitte Technology Fast 500 North America, Deloitte Technology Fast 50 Canada, G2 High Performer, The Globe and Mail Top Growing Companies, and Forrester Wave Strong Performer Sales Performance Management. JA2050. Forma has also received unsolicited press coverage, and its founder, Nabeil Alazzam, regularly appears on HR-focused podcasts. JA2050–51.

In April 2022, Forma applied to register FORMA.AI in standard characters, and in May 2023, the USPTO granted Registration No.

7,048,525. JA248. The USPTO did not demand proof of secondary meaning. JA250–56. Forma has since filed a second application, but the USPTO rejected it based on Twic's mark, citing a likelihood of confusion. JA1840–41.

## II. The parties sell related services to the same customers through the same channels.

Founded in 2017, Twic sells SaaS in the same HR technology space. JA502, JA1262, JA1271. Companies use Twic's software to design and administer employee benefits—a service related, though not identical, to Forma's. JA502, JA1262, JA1271.

Since rebranding in March 2022, Twic has grown. Before the rebrand, Twic had around 120 customers. JA521, JA2279–81. But between March 2022 and June 2024, it averaged around 200. JA1330; JA2483–85. Twic's marketing spend, though less than Forma's, is substantial: between March 2022 and June 2024, Twic spent $1,170,762 on advertising—roughly half what Forma did. JA1931–32, JA2067–68. That includes $620,000 in marketing, $331,000 on conferences, and $124,000 on company swag. JA1931–32, JA2067–68. Annualized, that's roughly $878,000. JA1931–32, JA2067–68.

Twic's growth has come at Forma's expense. Forma's entire universe of potential customers are also Twic's. JA2051. The two compete for the same HR budgets and investor funding. JA2051–52. Because HR departments have limited budgets, choosing between the platforms may be a zero-sum decision. JA2051–52.

Their marketing overlaps. Though Forma primarily sells directly to HR departments, it also sells through benefits brokers. JA2051–52. Twic relies principally on brokers but also markets directly to HR professionals. JA2051–52. When Forma makes sales through brokers, they typically come through ones that also work with Twic: WTW, Aon, Mercer, Sequoia Benefits, MMA, and HUB International. JA2051–52. Both companies attend the same trade shows, including WorldatWork, JA2052, and both advertise on the internet and maintain LinkedIn pages under their respective FORMA marks. JA613–14.

## III. Twic rebrands to Forma, bids on Forma's search terms, and confusion follows immediately.

Before the rebrand, Twic operated at www.twic.ai, using support@twic.ai for customer help and info@twic.ai for prospect inquiries. JA653–54. When Twic rebranded in March 2022, it moved to

www.joinforma.com and announced the change through mass emails. JA653–61.

Although Twic adopted a logo after rebranding, it often uses FORMA without any distinguishing mark. Soon after rebranding, Twic emailed existing customers that "Twic is now **Forma!**" JA657–60. Though earlier messages had teased an updated logo, the announcement did not include it. JA657–60. Twic's business cards also separate FORMA from its brandmark, printing "joinforma.com" twice on the reverse. JA588. Twic's SVP of marketing, Samuel Keninger, conceded that Twic "advertises and promotes its products and services *under the name FORMA*," never mentioning the brandmark. JA610 (emphasis added).

Twic also placed its mark before consumers searching for Forma. In November 2021, Twic hired a consultant to bolster its online presence, eventually enrolling in the "Google Start Up" program. JA662. Working with a Google AdWords specialist, Twic used Google's "Dynamic Search Ads" feature, which scraped Twic's webpages and generated an optimized keyword list—including "forma.ai," Forma's exact trademark. JA662–64. A Google search for "forma.ai" thus returned ads for Twic. JA662–64.

Twic's March 2022 rebrand triggered immediate confusion. In April 2022, an industry publication posted about Twic's rebrand on LinkedIn and tagged Forma. JA1844–45.

Customers and prospects were confused. Auditors at DataStax, then in discussions to purchase Forma's platform, flagged Forma as a financial risk, prompting an executive to demand an urgent call to "discuss finances." JA1138. Forma narrowly avoided losing the account; eventually, the representative realized the meeting was unnecessary because "[t]here was some confusion between Forma (the HR benefit provider) and Forma.ai." JA1816–18. The auditors had wrongly confused the two companies—the perceived risk was Twic, not Forma.

More examples followed. Iterable reversed course after productive discussions, declining to move forward: "OMG I'm so sorry! We use Forma for our expense submissions I honestly thought your initial email was from that account, not Forma.ai!" JA1820. Degreed, a Twic customer, contacted Forma to discuss "the upcoming renewal we have with Forma," asking auto-renewal be turned off. JA1825–26. A Clari employee—another Twic customer—asked Forma for help submitting a professional-development claim. JA1854–55.

Twic's own personnel acknowledged confusion. Twic's Manager of Customer Success emailed customers acknowledging "confusion" over inquiries wrongly sent to support@forma.ai. JA2567–72. One Twic employee incorrectly updated her LinkedIn to say she worked for Forma. JA1073. And Doug Landis, a consultant who had advised both companies, wrote to both CEOs: "Yes, I know, I know another 'Forma.' *Could be confusing*." JA1829–30 (emphasis added).

Industry professionals and investors were confused too. A Care.com representative pitched Forma on a wellness partnership and apologized: "Your name is very similar to the Forma benefits platform contact. Please forgive the confusion." JA2574–76. A Goldman Sachs representative realized he had "the Forma that attended Transform was 'joinforma.com' and not Forma.ai!" JA2377–78. A healthcare consultant left Forma a voicemail asking whether Forma had purchased Twic. JA2057. An associate at ACME Capital contacted Forma about a portfolio company that reported itself a Forma customer when it was Twic's. JA2057.

All told, Forma documented nearly 30 instances of actual confusion. JA1072–74.

## IV. Forma sues, and the district court enters judgment for Twic.

Forma sued Twic in the Eastern District of North Carolina in May 2023, asserting trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), together with unfair competition claims under California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, and North Carolina common law. JA225; JA238.

In August 2024, the parties cross-moved for partial summary judgment. Forma sought judgment on Twic's common-law priority defense in seventeen states, and the district court granted it; no one challenges that ruling here. JA14–15. Twic moved for partial summary judgment on likelihood of confusion under the Lanham Act, but its memorandum never discussed Forma's state-law claims and cited no California or North Carolina authority. JA1254–81.

Twic mainly attacked Forma's confusion evidence and mark strength. On confusion, Twic claimed Forma's 29 instances were *de minimis* compared to total opportunities. According to Twic, that number exceeded 400,000—the total emails Twic received at its support and info accounts between March 2022 and June 2024. JA521, JA1940. Although

Twic never produced those emails and admitted its figure contained duplicates, it asserted this was the only way to measure opportunities. JA2480–83.

On mark strength, Twic argued FORMA.AI was conceptually weak given the supposed proliferation of "forma" and the now-common "AI" abbreviation. To prove its point, Twic identified more than ten registrations containing "forma," including eight using the string inside other words. JA1265–66, JA1710–11.[1] But Twic offered no evidence that these marks were commercially significant or actually used among HR technology firms. JA1711.

Forma resisted. It disputed that every email Twic received was a relevant opportunity. Instead, Forma argued that the proper measure was the companies' combined customer base—their actual sales. That number was at most 223: Twic had "in the range of 200" customers between March 2022 and June 2024, JA1762, and Forma had 23, JA2048. The number was likely less, since Twic had customers before rebranding. JA2049.

[1] These include INFORMAI, MYPERFORMA, PERFORMA, PERFORMA ENTERPRISE, PERFORMA LABS, PROFORMA PROVISION, SAAS PROFORMA, and TRANSFORMAI. JA1710–11.

On conceptual strength, Forma pointed to Twic's own testimony: when presented with the same list of other marks, Twic's founder said its FORMA mark was still "super memorable" to HR professionals, because the other companies' names, goods, and services were different. JA2023–38.

The district court granted Twic's motion, awarding summary judgment on Forma's trademark claims and leaving state-law claims for trial. JA1–15. As the court reasoned, Forma lacked sufficient confusion evidence. Although acknowledging Forma's 29 instances "may at first appear damning," it discounted them against "at least tens of thousands of emails" Twic received, without explaining why Twic's approach provided an acceptable—much less the only acceptable—estimate for opportunities. JA10–11.

The court also found FORMA.AI conceptually and commercially weak. It credited Twic's assertion that software companies routinely use "Forma" in their names, dismissed ".AI" as "rapidly approaching" generic, and reasoned that FORMA.AI couldn't be "stronger than the sum of its parts." JA5–6. On commercial strength, the court concluded—without comparator evidence or citation—that Forma's advertising budget was

"comparatively small." JA6. It faulted Forma for not trying "to expand [its] reach to broader markets" and observed that 23 U.S. customers is "less than half a customer per state." JA6.

All told, the court found five of nine factors favored Twic, compelling summary judgment on Forma's Lanham Act claims. JA11, JA15.

Because Twic's motion never mentioned state-law claims, the court set them for trial. JA2644. Twic then moved for clarification or reconsideration under Rule 54(b). JA2645, JA2648–61. Forma opposed, observing that Twic hadn't raised those arguments at summary judgment. JA2706–24. Even so, the court reconsidered, concluding its earlier order had been "dead wrong" to leave state-law claims for trial. JA17. The clerk entered judgment for Twic.

## Summary of the Argument

This Court should reverse because the evidence, viewed most favorably to Forma, shows a reasonable jury could find likelihood of confusion between FORMA.AI and Twic's infringing FORMA mark. If the Court reverses the summary judgment order, it should also reverse the reconsideration order. If the Court affirms summary judgment, it should

still reverse on reconsideration because the district court's analysis violates precedent.

1. The district court erred in concluding that no reasonable juror could find a likelihood of confusion. Forma presented substantial actual confusion evidence. Forma's mark is strong, and its dominant portion, FORMA, closely resembles Twic's infringing mark.

A. Forma presented strong evidence of actual confusion. Since Twic adopted its infringing mark in March 2022, Forma documented nearly 30 instances.

i. These range from online misattribution to customers contacting Forma believing it was Twic. One customer threatened to end its relationship based on the mistaken belief that Forma was in financial distress—the perceived risk was Twic, not Forma. Even Twic's employees and advisors recognized the confusion risk. Twic's Manager of Customer Success acknowledged "confusion" from inquiries wrongly sent to Forma. JA2567–72. A consultant for both companies wrote to both CEOs: "Yes, I know, I know another 'Forma.' *Could be confusing*." JA1829–30 (emphasis added). One Twic employee updated her LinkedIn to say she worked for Forma. JA1073.

ii. Forma's confusion evidence is not *de minimis*. Between March 2022 and June 2024, Forma and Twic had about 225 customers combined—the total opportunities for confusion once Twic adopted the infringing mark. Under the approach that this Court has articulated, Forma's approximately 30 instances of actual confusion equate to a 13% confusion rate, in excess of the 10% threshold that this Court has held favors plaintiffs like Forma. Contrary to this precedent, the district court considered every single email Twic received after rebranding to be a separate opportunity for confusion. In doing so, the district court ignored Forma's precedent-consistent approach for measuring opportunities for confusion and treated Twic's counter-precedential method as the only correct method as a matter of law.

B. Forma's mark is conceptually and commercially strong, and the district court ignored Twic's admissions in concluding otherwise. Twic's CEO maintained that, despite other marks containing "forma," his company's mark remained "super memorable." If Twic's infringing mark is "super memorable" despite similar marks, so too is Forma's registered FORMA.AI. Twic's contrary arguments, like its appeal to the foreign equivalents doctrine, do not change this. Forma's mark is also

commercially strong given its spending and brand recognition in the HR technology market.

C. Because Forma presented powerful confusion evidence and holds a strong mark, summary judgment was inappropriate. The remaining factors either favor Forma or do not compel summary judgment for Twic. Forma's mark and Twic's FORMA mark are similar—consumers often see them in text-only format without other branding. Though the marks use different cases and colors, typical consumers would ignore those distinctions. And although Forma has sophisticated customers, the evidence shows those customers were in fact confused. Finally, Forma and Twic use similar advertising channels and distribution facilities.

2. Even if the district court were right to grant partial summary judgment, it erred in reconsidering its order and directing judgment for Twic. Twic's summary judgment filing never mentioned state-law claims—it sought judgment only on Lanham Act claims based on likelihood of confusion. Twic never argued that state-law claims required the same showing. The district court's reconsideration order considered arguments Twic never made, violating this Court's precedent. Twic also

failed to show the summary judgment order was "dead wrong"—that state-law claims obviously required likelihood of confusion. On either basis, the court erred.

## Argument

This Court should reverse both because the likelihood-of-confusion analysis misapplies the wrong standard and because the reconsideration analysis ignores precedent.

The summary judgment order wrongly concludes that no reasonable juror could find consumers likely to confuse FORMA.AI with Twic's FORMA mark. That conclusion is untenable.

Most troublingly, the order violates this Court's precedent by categorizing nearly 30 actual confusion instances as *de minimis* when the parties *combined* had fewer than 250 customers as of June 2024. It likewise ignores Forma's mark strength. Twic conceded conceptual strength—when asked whether other "forma" marks weakened its own, Twic emphatically rejected the premise. On commercial strength, the court ignored that Forma's target market is not the public and overlooked Forma's rapidly increasing expenditures, which now exceed Twic's annual marketing spend.

If the Court reverses summary judgment, it need not address reconsideration—that order rests on the summary judgment order's flawed premise.

But if the Court reaches reconsideration, the district court also erred. After prevailing at summary judgment, Twic argued for the first time that state-law claims required likelihood of confusion. Despite citing no California or North Carolina cases in its summary judgment motion, Twic insisted the order was manifestly wrong. The district court permitted new arguments and failed to apply the proper standard—whether the order is "dead wrong." Without a single case directly foreclosing Forma's theory, the court had no power to reconsider its order and deprive Forma of trial.

For either reason, this Court should vacate the judgment and remand so Forma's claims can be resolved by a jury.

## I. Viewing the evidence in the light most favorable to Forma, there is a likelihood of confusion between FORMA.AI and FORMA.

The district court determined that Forma could not succeed on its Lanham Act claims because no reasonable juror could find a likelihood of confusion between Forma's and Twic's respective marks. For trademark

registrants, like Forma, the Lanham Act protects them from another party's infringing use of their registered mark. 15 U.S.C. § 1114(1). The Lanham Act applies to non-registrants, too, protecting them from another's attempts to infringe on their trade name. 15 U.S.C. § 1125(a)(1)(A). The Lanham Act applies when the infringer's conduct "creates a likelihood of confusion" among consumers. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018) (cleaned up).

This Court applies a multi-factor test to assess likelihood of confusion. *See, e.g.*, *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984). This "inherently factual" analysis differs from case to case—all factors may not be relevant, or equally important. *Id.* And the registrant need not meet every factor. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012).

Ultimately, the Court should aim to determine whether the infringer's "actual practice" will likely confuse "consumers about the origin" of its service. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014). Nine non-mandatory factors guide the Court's analysis:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two

> marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Id.* This Court considers "actual confusion" the "most important" factor, followed by mark strength. *RXD Media, LLC v. IP Application Dev. LLC,* 986 F.3d 361, 373 (4th Cir. 2021); *Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455, 467 (4th Cir. 1996) ("If the strength of the senior mark is the alpha of infringement analysis, then evidence of actual confusion is surely the omega.").[2]

The district court erred in concluding that the factors favored Twic, compelling summary judgment. Properly viewed, a reasonable jury could find Forma produced sufficient actual confusion evidence and holds a conceptually and commercially strong mark. That alone clears the summary judgment hurdle. *Sara Lee Corp.,* 81 F.3d at 468. But the district court's analysis also misapprehends the evidence and misapplies the summary judgment standard throughout. This Court should reverse.

[2] Forma did not argue Twic's intent factor below and does not address it here.

### A. The Court applies de novo review.

This Court reviews de novo. *See Variety Stores*, 888 F.3d at 659–60. Confusion is "frequently" a disputed fact issue; at summary judgment, courts ask whether Forma presented enough evidence for a jury. *Id.* at 660.

### B. Forma presented sufficient evidence for a jury to conclude that the actual confusion factor weighs in its favor.

Start with the factor that matters most: actual confusion. Courts don't require it, but they consider proof that consumers were confused the "most compelling" evidence of likely confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 937 (4th Cir. 1995). "Actual confusion can be shown through either anecdotal or survey evidence." *RXD Media, LLC*, 986 F.3d at 373. When a registrant shows more than *de minimis* confusion, this factor tilts in the registrant's favor. *See, e.g.*, *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009); *Petro Stopping Ctrs. v. James River Petroleum, Inc.*, 130 F.3d 88, 95 (4th Cir. 1997).

Whether or not a registrant's confusion evidence clears the *de minimis* hurdle is a factual issue that depends on context. *See, e.g.*, *George & Co.*, 575 F.3d at 398. For example, one instance of confusion may be significant in some cases, but it loses importance if there were many opportunities for confusion. *Cf. Petro Stopping Ctrs*, 130 F.3d at 95 (4th Cir. 1997). To decide whether the registrant's evidence could show actual confusion, courts sometimes calculate a "confusion rate." That number—instances when a consumer was confused divided by the total opportunities to be confused—reveals the percentage of customers likely confused by the infringing mark. *RXD Media, LLC*, 986 F.3d at 373. But when the registrant relies on anecdotal evidence, the rate becomes less important because calculating it can be difficult. *See Lerner & Rowe, PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 720 (9th Cir. 2024) (with anecdotal evidence "instances of actual confusion present a numerator with no denominator"). So calculating the rate isn't necessary in every case.

The district court concluded this factor favored Twic, dismissing Forma's evidence as *de minimis*. Not so. Forma has compelling actual

confusion evidence, and the court's *de minimis* analysis misapplies both trademark law and the summary judgment standard.

**1. Forma's evidence shows that consumers were confused, and Twic's agents and employees were confused, too.**

Forma used anecdotal evidence and invited the court to consider it with other contextual evidence, accounting for problems with anecdotal proof. *Lerner & Rowe, PC*, 119 F.4th at 720.

Forma produced evidence of at least 29 instances where potential consumers confused FORMA.AI with Twic's FORMA mark. In 2023, Forma almost lost a sale after Twic adopted its confusing mark. A prospective customer's auditors flagged "Forma" as a financial risk, and its chief accounting officer demanded an urgent meeting to "discuss finances" before explaining that "[t]here was some confusion between Forma (the HR benefit provider) and Forma.ai." JA1816–18; JA1138. One prospect walked away from Forma after learning it was not Twic. JA1820. Twic's customers also grew confused, asking Forma for help with Twic's platform. JA1854–55; JA1859. One customer wanted Forma to disable auto-renewal, suggesting unhappiness with Twic's service. JA1825–26.

Forma also produced corroborating evidence that others—both online and inside Twic—struggled to distinguish the marks. One month after Twic rebranded, publications and marketers "tagged" Forma on LinkedIn posts meant for Twic. JA1844–46. A Twic employee updated her LinkedIn to reflect she worked at Forma. JA1073. And while raising capital, Twic's advisor, who had also worked with Forma, wrote both CEOs that "*another 'Forma' could be confusing*." JA1830 (emphasis added). And when the similarities were brought to Twic's attention, its Manager of Customer Success repeatedly acknowledged "confusion" between the two companies. JA2567–72. Twic did nothing.

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 158–59 (4th Cir. 2012), teaches that a jury—not the district court—should decide whether this evidence is actionable. There, the Court reversed summary judgment on similar evidence. Rosetta Stone held multiple trademarks, including for ROSETTA STONE and ROSETTA STONE LANGUAGE LEARNING SUCCESS. *Id.* at 150. Despite those registrations, Google allowed counterfeiters to purchase infringing ads through its "AdWords" product. *Id.* Rosetta Stone pointed to five instances of confusion, which Google

dismissed as *de minimis* against more than 100,000 opportunities. *Id.* at 158–59.

The district court concluded that Rosetta Stone's five examples were *de minimis*, but this Court disagreed. *Id.* Google's corporate designees could not distinguish Rosetta Stone's registered mark from the infringing marks during depositions. *Id.* So too here. Forma produced 29 cases of actual confusion, plus evidence that at least one Twic employee was confused and that Forma's own advisors thought the marks similar enough to cause confusion. JA1830. This Court has approved anecdotal confusion evidence, even though it typically shows only "the tip of an iceberg." *Lerner & Rowe, PC*, 119 F.4th at 720. If anecdotal proof remains viable, and this Court has said it does, Forma's evidence should survive summary judgment.

**2. If the "confusion rate" were relevant, Forma's evidence shows a rate exceeding 20%.**

If the Court calculates a confusion rate, the same result holds. The district court computed a minuscule rate that violates precedent, misapprehends Forma's evidence, and understates the real rate by incorrectly defining opportunities. Forma argued that the best measure was the

parties' combined customer count—if each instance involved an existing client, each client presented a unique opportunity.

The district court adopted Twic's approach, counting emails rather than clients. Twic asserted it received more than 400,000 emails between March 2022 and June 2024. But Twic produced no information about those emails: it could not say how many were from unique clients, how many from interested prospects, how many from spammers, or how many were duplicates. Twic admitted its number contained double counting. Despite this lack of detail, the court credited Twic's evidence—wrongly.

Calculating a rate isn't an exact science, but guidelines exist. To start, *de minimis* confusion usually translates to instances of confusion in the single digits. *See, e.g.*, *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 434 (6th Cir. 2017) (collecting cases, none of which had more than six instances of actual confusion). And when courts calculate a confusion rate, they strive to approximate the "contacts or transactions" that could have given rise to confusion. 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:14 (5th ed.). After selecting that number, if the rate exceeds 10% or so, this Court's precedent teaches that this factor weighs in the plaintiff's favor

on summary judgment. *Rosetta Stone*, 676 F.3d at 159 (17%); *RXD Media*, 986 F.3d at 373 (10%).

The district court ignored these guidelines and credited Twic's meaningless 400,000 number, which bears no relation to opportunities. Twic receives many emails, even from new customers. Onboarding a new Twic customer takes four to nine months and many meetings. JA2212–13. It's incredible to claim any single email represents an opportunity; it's more plausible that Twic and its customers engage in protracted correspondence.

By crediting Twic's number, the court concluded that *every email Twic received over two years* was a unique opportunity. Common sense says that cannot be true. Twic knew only that the 400,000 messages came from two accounts, support and info@joinForma.com. JA521. Twic knew nothing else—not how many emails came from either address, despite agreeing that existing customers more likely used support while prospects used info. *See* JA1781–82. Nor could Twic say how many came from any one client. *See* JA1781–82. Twic knows nothing about its inboxes.

To credit Twic's evidence, the court speculated and dismissed Forma's competing evidence. Forma showed that Twic's existing customers were confused. Twic's contrary evidence reflects tens of thousands of potential-customer inquiries—while not irrelevant, this fails to address Forma's theory directly. Even assuming all Twic's emails reflect existing-customer inquiries, the court's analysis rests on speculation. Each email is not a unique opportunity. Perhaps Twic has a few inquisitive customers prone to complain, and 400,000 emails could come largely from them. A handful of nagging customers do not translate into 400,000 opportunities. Nor would a spam-filled inbox. Without concrete information, Twic offers only speculation, and the court erred in crediting it.

Contrast Twic's speculative calculation with Forma's evidence-based one. Forma's approach tracks this Court's precedent and reality. This Court assesses total sales—not total emails—when analyzing *de minimis* evidence. *See, e.g.*, *George & Co.,* 575 F.3d at 399 (noting "huge sales volume"); *Petro Stopping Ctrs.,* 130 F.3d at 95 (addressing a "huge volume of commerce"); *Select Auto Imps. Inc. v. Yates Select Auto Sales, LLC,* 195 F. Supp. 3d 818, 839 (E.D. Va. 2016) (assessing instances

against actual sales). Forma took the same approach. The combined customer base of at most 223 roughly tracks each company's sales.

Forma's approach is conservative. In June 2024, Forma had 23 customers and Twic around 200. When Twic rebranded in March 2022, it had around 120. JA521, JA2279–81. Forma's evidence shows some Twic customers were confused. JA2051–58. But Twic's existing customers were less likely confused than post-rebrand customers because they were already familiar with Twic's product. Viewed favorably to Forma, the Court can infer far fewer than 223 opportunities, yielding a rate well above the summary judgment threshold.

The district court's analysis also resolves a key factual dispute: how many opportunities existed. Even if Twic's calculation were plausible, so is Forma's. By rejecting Forma's calculation, the court concluded that Forma's conservative sales-based estimate was legally irrelevant. Given the fact-specific nature of the confusion analysis, the court was wrong to brush Forma's evidence aside and treat Twic's evidence as undeniably correct. This factor favors Forma.[3]

[3] The district court likewise dismissed Forma's evidence as "initial interest confusion." Neither party made that argument, so the district court's analysis violated party presentation. *See Clark v. Sweeney*, 607

* * *

Forma has compelling evidence of consumer confusion, and there's no need to calculate a rate under *Rosetta Stone*. The court had no reason to consider initial-interest confusion. And Twic's effort to minimize Forma's evidence by inflating opportunities falls flat. This factor favors Forma.

### C. Forma presented sufficient evidence for a reasonable juror to conclude that its mark is strong.

Next, consider the strength of Forma's mark. Like actual confusion, the strength of a mark is "paramount" to the Court's analysis. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). A mark's strength means "the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263,

U.S. 7, 9–10 (2025). The district court also erred on the merits. Initial-interest confusion refers to a bait and switch, *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 638 (7th Cir. 1999)—a competitor uses a trademark to reel customers in and later make a sale, despite disclosing the truth, based only on the customer's initial interest. *Lamparello v. Falwell*, 420 F.3d 309, 315–16 (4th Cir. 2005). None of Forma's evidence suggests Twic used bait-and-switch tactics.

269 (4th Cir. 2006). Strength breaks down along two lines: conceptual and commercial strength. *Id.*

The district court concluded Forma's mark was neither conceptually nor commercially strong. It was wrong on both scores.

**1. Forma's mark is conceptually strong.**

Consider first conceptual strength. Conceptual strength, sometimes called "inherent" strength, focuses on the mark's "linguistic or graphic peculiarity." *Id.* The Court begins its analysis by "placing the mark into one of four categories of distinctiveness": generic, descriptive, suggestive, or arbitrary and fanciful. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 315 (4th Cir. 2017) (cleaned up). Fanciful marks typically involve "made-up words," while suggestive marks "do not describe a product's features but merely suggest them," requiring the viewer to use "some imagination." *Id.* (cleaned up). By contrast, descriptive marks "describe a function, use, characteristic, size, or intended purpose of the product." *Id.* While trademark law protects descriptive marks, it must have first "acquired a secondary meaning." *Id.*

The parties disputed classification. Forma argued its mark was (at worst) suggestive; Twic claimed descriptive; the court sided with Twic.

True, the court acknowledged, the Trademark Office granted registration without requiring secondary meaning, but that was not dispositive. JA4 (citing *Pizzeria Uno*, 747 F.2d at 1534). While professing not to dissect Forma's mark, the court concluded that "FORMA" was in wide use within the market, weakening Forma's mark. JA4–5. So too was ".ai," which the court characterized as "rapidly approaching" generic status. JA5.

The court wrongly discounted Forma's mark as descriptive. Twic had, according to the court, produced "ample evidence" of "wide use" of "Forma" "throughout the shared market class." JA5. But that evidence—a list of other companies using Forma in their names—does not carry the significance the court gave it. The Trademark Office "may not grant registration to a mark [that] it finds to be merely descriptive." *Pizzeria Uno*, 747 F.2d at 1528 (cleaned up). When the Office grants registration without requiring secondary meaning, the mark is presumptively valid, and the infringer bears the burden of showing it is descriptive or generic. *Id.* at 1534. Forma's mark satisfies that bar, shifting the burden to Twic. JA2049.

Forma's mark is presumptively suggestive, and, viewed favorably to Forma, Twic failed to rebut that presumption. Consider the four

companies the court identified: "ONEFORMA," "DEALFORMA," "COFORMA," and "SCIFORMA." JA5. When asked whether these marks undermined its own FORMA, Twic said no. For ONEFORMA: the "[m]ark and name [were] different" and the "[g]oods and services" were "also different." JA2234. Twic gave the same response for DEALFORMA. JA2234. Indeed, Twic refused to concede that *any* combination of FORMA with another word weakened its mark. *See* JA2231–37.

If no variation on FORMA weakens Twic's infringing mark, those same variations do not affect Forma's registered FORMA.AI mark. By Twic's admission, its FORMA remains "super memorable" despite marks like ONEFORMA and DEALFORMA. The key, Twic claims, is that the marks and names are different. Yet before the district court, Twic argued that FORMA.AI was not similarly "super memorable." That distinction defies logic. The court did not address this contradiction, but this Court should. Viewed favorably to Forma, conceptual strength favors Forma.

Twic's argument below, and the court's analysis adopting it, both violated the anti-dissection principle and erroneously applied the doctrine of foreign equivalents to Latin, a dead language. "Dead

Language," Cambridge Dictionary, https://dub.sh/DeadLang (last visited Aug. 7, 2026). Both errors confirm that the Court should reverse.

Start with anti-dissection. The anti-dissection principle dictates that courts consider a mark "as a whole." *E.g.*, *Kibler v. Hall*, 843 F.3d 1068, 1077 (6th Cir. 2016). That requirement recognizes the reality that "an ordinary prospective buyer" perceives the mark "as a whole, not by its component parts." McCarthy, *supra* § 23:41. So while courts may view components "as a preliminary step," the relevant inquiry must address the mark as a whole. *Id.* The district court did not do that.

The court never considered FORMA.AI as a whole. Its analysis ended after (wrongly) concluding both components were weak: "appending two conceptually weak identifiers does not create a mark stronger than the sum of its parts." JA5. Yet the court never considered the sum of these two parts. It considered "FORMA," it considered ".AI," and concluded that, because the parts were weak, so was their combination. Had the court heeded the anti-dissection principle and viewed the evidence favorably to Forma, it would have found FORMA.AI presumptively strong and Twic's rebuttal inadequate.

Twic contends FORMA is itself descriptive—and thus conceptually weak—because in Latin it means "model." In other words, Twic invokes the doctrine of foreign equivalents. That doctrine dictates that, for marks in a foreign language, courts should translate into English to determine suggestiveness or descriptiveness. *Pizzeria Uno*, 747 F.2d at 1531. But the point is to determine how "that segment of the purchasing public [that] is familiar with that language" perceives the mark. *Id.* If FORMA were French, German, or Spanish, its translation might matter. *See id.*; McCarthy, *supra* § 23:36. But Latin is a dead language.

The doctrine of foreign equivalents does not apply to Latin. As the Federal Circuit recently explained, under the doctrine of foreign equivalents, a "descriptive word, used in one of the modern languages of the principal nations of the world, cannot be properly registered as a [trademark]." *In re Vetements Grp. AG*, 137 F.4th 1317, 1326 (Fed. Cir. 2025). Put differently, the doctrine applies only if an "appreciable number" of consumers would understand the word in its foreign form. *Id.* at 1331. McCarthy likewise explains that the doctrine does not apply to words from dead languages, or even those that are "used only by relatively few." McCarthy, *supra* § 23:36. Applying those principles here,

Twic cannot credibly claim that the Court should translate FORMA, a word borrowed from a language that has no native speakers, into its English equivalent.

### 2. Forma's mark is commercially strong.

FORMA.AI is not only conceptually strong but commercially strong. Commercial strength means "a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *CareFirst*, 434 F.3d at 269. The analysis considers advertising expenditures, consumer studies, sales success, unsolicited media coverage, attempts to plagiarize the mark, and length and exclusivity of use. *Grayson O*, 856 F.3d at 316.

Before addressing the factors demonstrating the FORMA.AI mark's commercial strength, consider the context surrounding those factors. The focus of the commercial strength analysis should be "present or prospective consumers." *CareFirst*, 434 F.3d at 269. To determine whether those customers associate FORMA.AI with Forma, the "relevant market" is an "important aspect" of the analysis. *E.g.*, *Morningside Grp., Ltd. v. Morningside Cap. Grp., LLC*, 182 F.3d 133, 139 (2d Cir. 1999).

Forma readily concedes that FORMA.AI is not MCDONALDS or COKE. But that does not make its mark commercially weak. Unlike global brands, Forma targets a niche market, not every resident of nearly every country on Earth. JA2049. Forma targets customers based on their "employee count, degree of growth, and type of compensation" used to "retain and incentivize talent." JA2049. All told, Forma has fewer than 5,000 potential customers. JA2049.

In its niche market, Forma's mark is strong. Even with only 23 U.S. customers, Forma's brand is "sticky": it emphasizes customer quality and retention over number. JA2049. Forma has used its mark continuously for six years, JA2050, building awareness with investors and sales, HR, and financial professionals at major corporations, including Willis Towers Watson and Aon. JA2050–52.

Forma's brand has gained press recognition. In 2023, Deloitte Technology Fast 500 North America, Deloitte Technology Fast 50 Canada, G2 High Performer, The Globe and Mail Top Growing Companies, and Forrester Wave Strong Performer Sales Performance Management all named Forma among award recipients. JA2050. Forma's founder, Nabeil Alazzam, has appeared on multiple industry

podcasts. JA2050. True, Forma spent only around $5,000,000 on targeted marketing since 2016, including guides, videos, invitation-only events, monthly panels, and quarterly networking events. JA2050. But those numbers grew steadily since September 2021, surpassing $1,000,000 each year. *See* JA1142. A total investment exceeding $5,000,000, especially on an upward trend, is significant given Forma's quality-over-quantity mindset. *See* JA2048.

The district court erred in determining Forma's mark commercially weak. It discounted Forma's $5 million advertising spend as "comparatively small" and criticized Forma for not trying "to expand [its] reach to broader markets." JA6. It faulted Forma for having only 23 customers. JA6. None of these criticisms are well-founded.

To start, the district court was wrong to discount Forma's advertising spend as "comparatively small" without explaining its benchmark. Comparing Forma's expenditures to Twic's would show they weren't so disparate to merit summary judgment. Twic's profit-and-loss statements reflect $1,170,762 in advertising expenses, including digital advertising and "company swag," between March 1, 2022, and June 30, 2023. JA1931–32; JA2067–68. Annualized, Twic spent about $878,000 yearly.

During roughly the same period, Forma spent *more than twice* Twic's annual budget year over year. Between September 1, 2022, and August 31, 2023, Forma spent $1,262,177 on domestic marketing alone. JA1142. The following year, it jumped to $1,726,303. JA1142. Neither Twic nor the court had any basis for concluding that Forma's expenditures undercut commercial strength.

The court's criticism that Forma hadn't expanded into other markets suffers from two flaws. First, it's irrelevant. The court inferred Forma wasn't trying to enter new markets (itself a summary-judgment violation), but cited no case requiring expansion. Second, the court failed to appreciate that, though Forma's marketing expenditures were lean during its start-up years and pandemic, it had greatly expanded spending since fiscal 2022 and was outspending Twic annually. JA1142.

The court's "half a customer per state" analysis is likewise meaningless. Forma's consumers are not the general public. *See* McCarthy, *supra* § 15:46. Forma isn't Coca-Cola; it targets "large global enterprises, Fortune 500" companies with more than 500 employees, sales teams exceeding 100 people, or growth exceeding 20% annually. JA2048. In the United States, Forma has only 5,000 potential customers,

and many states would not host even five potential customers. JA2049. The court also overlooked Forma's customer growth rate. In 2018, Forma had one customer. It added three in 2019, three in 2020, four in 2021, and four in 2022. JA136; JA1201–1411. So while Forma had only 23 customers in October 2023, its niche customer base was growing steadily, demonstrating commercial strength.

* * *

The court erred in concluding Forma's mark was weak. The Court should presume Forma's mark is, at worst, suggestive, and Twic presented no evidence otherwise. When considered in context, Forma's mark is commercially strong. Forma outspends Twic annually, has received numerous accolades, and grows steadily. The court was wrong that no reasonable jury could side with Forma.

### D. The other factors weigh in Forma's favor or at least do not compel summary judgment for Twic.

The Court should reverse based on actual confusion and mark strength alone. But the other factors also tilt toward Forma.

#### 1. The marks are similar.

To determine mark similarity, the Court considers them "in the context in which [they are] seen by the ordinary consumer." *Grayson O*,

856 F.3d at 317. The Court should "give the dominant part of a mark more weight" because "consumers are more likely to confuse marks with dominant similar features than marks with less noticeable similar features." *Id.* Marks have similar features when they share similarities "in sight, sound, and meaning," *George & Co.*, 575 F.3d at 396, or in "style, color, [and] presentation," *Grayson O*, 856 F.3d at 318.

The court mentioned the standard but refused to apply it. Acknowledging that both marks share a "prominent" feature—the word "forma"—the court discounted that similarity. Despite evidence confirming that Forma and Twic both use their marks as plain text, the court evaluated only their stylized logos. Based on logo differences, the court tilted this factor to Twic. That was error.

Contrary to the district court's conclusion, in context, Forma's mark and Twic's infringing mark are nearly indistinguishable. The images that the district court compared look like this:

FORMA.AI | forma

JA1–2. But in practice, they appear as "FORMA.AI" and "forma," without the logo. Comparing those displays—the relevant inquiry—the marks are virtually identical.

Viewed favorably to Forma, the evidence shows the Court should compare "FORMA.AI" and "forma," not stylized logos. Forma's registration is for standard characters—"FORMA.AI"—not a logo. JA2050. Forma's testimony confirms it "sometimes uses its mark without any logo or coloring." JA2050. Its documents demonstrate the same. JA948–50.

Twic uses its mark without its logo in at least three significant ways. First, Twic used its mark without a logo when rebranding. The launch email told customers "Twic is now **Forma!**" JA660. Though earlier emails teased a new logo, the launch email omitted it. JA657–60.

Second, Twic's marketing materials use "forma" without the logo. Twic's business cards visually separate "forma" from the logo. *See* JA588. The reverse lists Twic's domain, joinforma.com, twice—once in an email and again as a standalone. JA588. Neither instance includes the logo the court considered. JA588.

Third, a Google search for "forma.ai" returned ads for Twic. JA662–64. In November 2021, Twic hired Lynn Tan to bolster its online presence. JA662. Through the "Google Start Up" program, Twic worked with a Google AdWords specialist who created an optimized keyword list. JA662. Google automatically generated a list that included "forma.ai." JA663–64.

Finally, Twic's senior vice president of marketing, Samuel Keninger, acknowledged that Twic "advertises and promotes its products and services *under the name FORMA*." JA610. Keninger did not mention Twic's logo or brand. He confessed that Twic uses the name FORMA without any logo in customer-facing ways, including in advertising and promotional articles attributed to Twic's CEO. JA2091–97. Keninger's testimony reflects Twic's strategy: it wants the public to know it by name.

What's more, it's immaterial that Forma's and Twic's marks may use different capitalization or colors. When two marks share a dominant portion, differences in font and design matter little. *See, e.g.*, *FCOA LLC v. Foremost Title & Escrow Servs.*, 57 F.4th 939, 952 (11th Cir. 2023); *In re Shell Oil Co.*, 992 F.2d 1204, 1206 (Fed. Cir. 1993). As the Eleventh Circuit recently explained, such variations are insignificant at summary

judgment given that consumers most often focus on the "dominant part of both marks." *FCOA*, 57 F.4th at 953. Here, given Twic's assertion that ".ai" is generic, there is no question that "FORMA" is the dominant part of both marks as used in the marketplace.

This evidence shows consumers are barraged with Twic's FORMA mark but not its brandmark. That problem compounds when considered alongside Forma's FORMA.AI mark.

**2. Even though Forma's customers are sophisticated, their sophistication does not diminish the likelihood of confusion.**

Finally, even though Forma's consumers are usually sophisticated, that fact alone does not control the confusion inquiry. True, "the sophistication and expertise of the usual purchasers can preclude any likelihood of confusion among them stemming from the similarity of trade names." *Perini Corp v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990). Even so, buyer sophistication does not control in every case.

Forma's evidence shows actual confusion among sophisticated buyers. Courts should not "woodenly appl[y] the general rule that likelihood of confusion is diminished when potential purchasers are sophisticated." *Morningside Grp., Ltd. v. Morningside Cap. Grp.*, 182

F.3d 133, 142–43 (2d Cir. 1999). When a registrant shows "evidence of actual confusion among several highly sophisticated . . . professionals," the buyer-sophistication inquiry becomes irrelevant. *See id.* Forma has many instances of confusion among sophisticated buyers, showing that their sophistication was no impediment to confusion.

Even more, it's debatable whether the sophisticated-buyer rule applies here given the low cost of Forma's and Twic's goods. "If the goods or services are relatively expensive, more care is taken and buyers are less likely to be confused as to source or affiliation." McCarthy*, supra* § 23:95. By contrast, courts presume that "relatively inexpensive" goods are bought with "less investigation and care." *Id.* § 23:96; *see also Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 90–91 (2d Cir. 2020). Twic's customers pay a lot for employee benefits in general, but Twic's software services represent a tiny fraction of their budget. *See* JA2215–16. While those customers are more likely to select some benefits, like health insurance, with great care, a jury could conclude that they would take significantly less care when picking less-costly budget items, like Twic's software.

### 3. The district court concluded that the remaining factors either favor Forma or, at worst, are neutral.

The district court concluded that four factors either weighed in Forma's favor or were neutral. Twic conceded the parties offer similar goods and services, which supports confusion. *See* JA7. Viewing the facts favorably to Forma, advertising similarity also favored confusion. JA8. And the court reasoned that the similarity of facilities and product quality were neutral. JA8, JA11.

Two factors merit little mention. Because Twic conceded that its products were similar to Forma's, it cannot now walk that concession back. *See Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004) ("Judicial admissions are [binding, and they] . . . include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law."). And neither party quibbled over the quality of their products.

Two remaining factors—facilities and advertising—were disputed below and merit discussion. Courts "examine the similarity of the facilities used by the parties and the similarity of their advertising."

*George & Co.*, 575 F.3d at 397. The court concluded these factors were neutral and weighed in Forma's favor, respectively. JA7–8. To assess facility similarity, courts ask whether there are "basic differences" between their "modes of distributing their products." *Swatch AG*, 739 F.3d at 160. For advertising, courts assess "the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and [their] content." *CareFirst of Md.*, 434 F.3d at 273.

The facilities inquiry favors Forma—or is, as the court concluded, neutral at worst. The Court should consider "how and to whom the respective goods of the parties are sold," and the "key question" is "whether both products are sold in the same channels." *Rosetta Stone*, 676 F.3d at 155 (cleaned up). The evidence shows both Forma and Twic market their services to, and sell to, employee benefits professionals. Twic concedes its relevant universe of customers is identical to Forma's. JA611, JA2052.

Though Forma and Twic use different proportions of direct and third-party sales, both generate sales by targeting benefits professionals. Both use customer request forms on their websites, and Twic estimates 300 to 700 such requests annually. JA2052; JA2166. Both make third-

party sales through brokers like WTW, Aon, Mercer, Sequoia Benefits, MMA, and HUB International. JA2164. While Twic highlighted that the parties used these channels in roughly inverse proportions, the ultimate buyer in both cases is the same: benefits professionals. As Twic's senior vice president of marketing put it, benefits professionals are the "exclusive buyers of our products and services." JA611.

To argue to the contrary, Twic focused on the distinction between direct and third-party sales, but failed to appreciate that both parties target the same relevant purchasers. Courts sometimes differentiate between facilities when, for example, the parties sell their products not only through different outlets but to very different consumers. *Cf. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 262–63 (4th Cir. 2007) ("[T]here is little overlap in the individual retail stores selling the brands."). But here, it does not matter that Forma favors direct sales or that Twic favors sales through a third-party; both companies engage with benefits professionals in hopes that those individuals, the ultimate buyer, will choose their respective product.

So too does the advertising inquiry favor Forma—both parties use similar media at similar locations. Both parties advertise in two relevant

venues—nationally on the internet, *see, e.g.*, *Westmont Living, Inc. v. Ret. Unlimited, Inc.*, 132 F.4th 288, 298 (4th Cir. 2025), and at industry-wide tradeshows. Start with the internet, which best highlights the similarities in the parties' advertising. A Google search for "forma" retrieves hits for both Forma and Twic located near one another. JA2052. That's unsurprising given that Twic participated in the "Google Start Up" program, which affiliated its website with Google AdWords like "forma.ai." JA662–64.

Both Forma and Twic participated in the WorldAtWork and HR Transform conferences, solidifying advertising similarities. JA2052. After HR Transform, Forma received an inquiry from a Goldman Sachs-affiliated potential investor, who realized "the Forma that attended Transform was 'joinforma.com' and not Forma.ai!" JA2376–78. A jury could infer that confusion resulted from the parties' similar advertising.

Below, Twic tried to escape this conclusion by arguing that Forma's and Twic's internet presence is quantitatively different; pointing out that, while both parties use LinkedIn, they do so differently. But the fact that one party uses social media, like LinkedIn, more than the other should not matter given that Twic displays its infringing FORMA mark

on website designs, in Google searches, and in other internet publications. *See, e.g.*, *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, (4th Cir. 2023), *vacated on other grounds by*, *Dewberry Grp., Inc. v. Dewberry Eng'rs, Inc.*, 604 U.S. 321 (2025). Both Forma and Twic advertise on Google, which directs users to Twic's website and advertisements.

* * * * *

Viewed properly, Forma's evidence shows that a reasonable jury could find a likelihood of confusion. It produced powerful evidence of actual confusion, and its mark is strong, both conceptually and commercially. That should be enough to warrant reversal. But if it weren't, Forma has also shown that its mark and Twic's infringing FORMA mark are similar and that the companies use similar means of advertising and distributing their products. Forma doesn't need every factor to weigh in its favor to survive summary judgment. But a jury could conclude that nearly every factor either does or is neutral. The Court should reverse.

## II. In any event, the district court erred when it reconsidered its partial summary judgment order and entered judgment in Twic's favor.

If the Court concludes summary judgment was wrong, it need not independently analyze the reconsideration order because the latter depends on the former. When granting reconsideration, the court observed that Forma's "state law unfair competition claims cannot proceed . . . given that no likelihood of confusion exists between the parties' marks." JA23. Because the court granted Twic's motion based on a faulty legal premise, the Court should vacate the judgment and remand for trial on all claims.

At minimum, the Court should vacate the reconsideration order and remand for trial on Forma's state-law claims because the order is flawed in two respects.

To start, by reconsidering its summary judgment order, the district court allowed Twic to raise new arguments that it failed to make in its summary judgment motion. Courts agree that parties generally have "no right to raise new theories or arguments in a motion for reconsideration." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003); *accord RCBA Nutraceuticals, LLC v. ProAmpac Holdings, Inc.*, 108 F.4th 997, 1005 (7th Cir. 2024) ("A party may not raise an argument for the first time in a motion for reconsideration."). Because reconsideration "can

waste judicial resources and obstruct the efficient administration of justice," "dissatisfied litigant[s]" cannot use it to get a "second bite at the apple." *Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Yet the district court reconsidered its summary judgment order, disposing of all of Forma's claims, despite Twic moving for summary judgment only on Forma's trademark claim.

In any event, the district court also misapplied the standard for reconsideration. This Court's precedent teaches that district courts should not lightly reconsider their interlocutory orders under Rule 54(b). *See, e.g.*, *U.S. Tobacco Co-op Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256–60 (4th Cir. 2018). While district courts retain "the power to reconsider and modify [their] interlocutory judgments," it is "not limitless" and district courts should treat their interlocutory orders as "law of the case." *Id.* at 256–57. This Court has outlined three instances in which reconsideration might be appropriate, including when the earlier decision amounts to "clear error causing manifest injustice." *Id.* at 257. The district court's summary judgment order was not clearly wrong, so reconsideration was improper.

Both errors counsel in favor of reversal.

### A. Reconsideration is discretionary, but the district court committed a legal error, which this Court reviews de novo.

This Court reviews reconsideration decisions under Rule 54(b) for abuse. *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Though that usually means reviewing for arbitrariness, a legal error is always an abuse of discretion. *See, e.g.*, *Gannett Co. v. Clark Constr. Grp.*, 286 F.3d 737, 741 (4th Cir. 2002).

### B. The district court's decision allowed Twic to raise new arguments that it failed to make at summary judgment.

The court grounded its reconsideration in arguments Twic failed to make at summary judgment, improperly giving Twic a second bite at the apple. Twic moved for *partial* summary judgment, seeking judgment on Forma's trademark claim because "there is no likelihood of confusion." JA496. Twic never sought judgment on Forma's state-law claims. Yet when granting reconsideration, the court entered judgment against Forma on all claims.

The court brushed this concern aside, reasoning that Twic's earlier motion raised a question with the "capacity to end the case" and requested judgment on "each of Plaintiff's claims." JA21. That analysis founders.

The district court ignored Twic's failure to make—much less develop—any argument attacking Forma's state-law claims. On appeal, parties waive arguments that they fail to *develop*; it's not good enough to take a "passing shot." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). District courts follow the same principle when faced with a motion for reconsideration, *see, e.g.*, *U.S. Tobacco Co-op v. United States*, 2019 WL 8323614, at *2 (E.D.N.C. Nov. 8, 2019), a recognition that such motions are "disfavored," *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022).

Twic's summary-judgment briefing mentions Forma's state-law claims only in passing. *See generally* JA1254–81. Twic acknowledged they exist, JA1254, but its argument focused on "trademark infringement," JA1261. The remainder discusses likelihood-of-confusion factors. JA1261–79. The brief is devoid of specific mention of Forma's unfair competition and unfair trade practices claims.

The court treated Twic's vague reference to "each of [Forma's] claims," JA1280, as a developed argument preserving the issue for reconsideration. The court failed to appreciate that Twic moved only for partial summary judgment, and its "claims" reference came in the conclusion of

a nearly 30-page brief that neither recited state-law claim elements nor cited a single state statute or court decision. Given this failure, Forma did not brief those claims in its opposition. *See generally* JA1685–1721. Forma took Twic's motion at face value—Twic sought only *partial* summary judgment, not judgment on all claims.

The court should not have entertained Twic's motion, which gave it a second bite at the summary-judgment apple. Doing so was improper.

**C. The district court misapplied the reconsideration standard to grant Twic's motion.**

Even if Twic had sufficiently made the argument, the court's decision flouts this Court's precedent, ignoring the limits on a court's power to reconsider an interlocutory order. Clear error is a high standard. A court may not reconsider its orders if they are "maybe" or "probably" wrong—they must be "dead wrong"; the error must be so obvious that it has the force of a "five-week-old, unrefrigerated dead fish." *U.S. Tobacco Co-op*, 899 F.3d at 258. Yet the district court reconsidered its order based on the dubious proposition that Forma's state-law claims required a likelihood of confusion.

Forma's unfair competition claims do not obviously require a likelihood of confusion. To obtain reconsideration, the movant usually

must "point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Here, no controlling law compelled the district court's reconsideration order. To be sure, a likelihood of confusion is *sufficient* to show a violation of California's unfair competition law, *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999), or North Carolina's unfair or deceptive practices act, *see, e.g.*, *Ga.-Pac. Consumer Prods. v. Von Drehle Corp.*, 618 F.3d 441, 449–55 (4th Cir. 2010); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). But it is unnecessary. *See, e.g.*, *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 151 (4th Cir. 2012); *Cel-Tech Commc'ns*, 973 P.2d at 544.

For example, California's unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits "unfair, dishonest, deceptive, destructive, fraudulent[, or] discriminatory practices[.]" *Cel-Tech Commc'ns*, 973 P.2d at 539. The remedies available under the UCL are "limited," but its "scope is broad," including "anything that can properly be called a business practice," *id.*, even if that practice is "not specifically proscribed by some other law." *Id.* at 540. Relying on those concepts, the Ninth Circuit has suggested that, in the context of trademark infringement, a

UCL claim may proceed even if there is no likelihood of confusion. *See, e.g.*, *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1261 (9th Cir. 2022) ("*Because Lodestar has not contended that the non-monetary portion of its UCL claim could survive in the absence of a likelihood of confusion*, that claim was properly dismissed as well." (emphasis added)).

The district court's determination that Forma failed to show a likelihood of confusion sufficient to support its Lanham Act claim should not change the outcome. The test for a violation of the UCL is "substantially congruent" to a trademark infringement claim—not identical in every respect. *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991). Here, there is no question that Forma produced evidence of actual confusion. While the district court dismissed that evidence as *de minimis*, neither the district court nor Twic cited any authority, from a California appellate court, the Ninth Circuit, or any other jurisdiction, to support the inference that *de minimis* confusion doomed Forma's claim under California law. Without law directly on point, the district court erred.

And this Court's decision in *Belk* shows the same for North Carolina law. An act is "deceptive," under the UDPA, if it has the "capacity to

mislead *or* [it] creates the likelihood of deception." *Belk*, 679 F.3d at 166 (emphasis added); *see also Gilbane Bldg. Co. v. Fed. Rsrv. Bank*, 80 F.3d 895, 902 (4th Cir. 1996). Under this Court's precedent, a likelihood of confusion—that is, a likelihood of deception—may overlap with, but ultimately remains distinct from, the "capacity or tendency to mislead." Put differently, whether or not Twic's mark is likely to confuse customers generally, Forma has evidence that it actually confused some customers, thus reflecting the capacity to deceive. What's more, neither the district court nor Twic identified any North Carolina case that would prohibit Forma from recovering under the UDPA, even if its evidence of actual confusion were *de minimis* or otherwise not actionable under the Lanham Act.1

The Supreme Court of North Carolina has distinguished between unfair competition and trademark infringement. For example, in *Two Way Radio Serv. Inc. v. Two Way Radio of Carolina, Inc.*, the court observed that the principles of unfair competition and trademark infringement may be "practically identical" in "a great many instances," suggesting that they are not identical in *every* case. 322 N.C. 809, 816 (1988). Earlier, in *Charcoal Steak House of Charlotte, Inc. v. Staley*, the

court observed that even names not subject to protection under the Lanham Act could be the subject of an unfair competition claim. 263 N.C. 199, 201 (1964) ("Although a generic word or a geographic designation cannot become an arbitrary trademark, it may nevertheless be used deceptively by a newcomer to the field so as to amount to unfair competition.").

The court thus erred when it concluded that its summary judgment order was dead wrong. Twic pointed to no "controlling decisions" compelling a different outcome. Even if the court thought its order was potentially—or even probably—wrong, it should have allowed Forma's state-law claims to go to trial.

* * * * *

Even if the Court rejects Forma's principal argument, it should still reverse the reconsideration order and remand for trial. The court improperly allowed Twic to raise new arguments on reconsideration and reconsidered its summary judgment order without clear precedent requiring it to do so. Those decisions were legal errors, and Forma is entitled to a trial.

## Conclusion

This Court should reverse. The district court erred when it granted Twic's motion for summary judgment. Forma's evidence, viewed properly, demonstrates that a reasonable jury could conclude Twic's use of FORMA is likely to confuse consumers. Because the district court erred when it granted Twic's motion for summary judgment, it necessarily erred when it granted the motion for reconsideration. Even if the Court disagrees, the district court still erred when it granted Twic's motion for reconsideration. It allowed Twic to present new arguments and erred by reconsidering when its summary judgment order did not meet the high bar for reconsideration.

## Statement Regarding Oral Argument

Forma believes that the district court disregarded this Court's precedent when it granted Twic's motion for partial summary judgment. Even so, Forma's argument, particularly that about calculating opportunities for confusion, provides this Court with an opportunity to clarify its precedent on that issue. Moreover, this case is fact intensive. Forma believes argument will aid the Court's decisional process.

Respectfully submitted, this the 17th of August 2026.

**WARD AND SMITH, P.A.**

*/s/Chris Edwards*
Christopher S. Edwards
N.C. State Bar I.D. No.: 48385
email: csedwards@wardandsmith.com
Joseph A. Schouten
N.C. State Bar I.D. No.: 39430
email: jas@wardandsmith.com
P.O. Box 7068
Wilmington, NC 28406-7068
Telephone: 910.794.4800
Facsimile: 910.794.4877

*Counsel for Forma AI, Inc*

**Certificate of Compliance**

1. This brief complies with the type-volume limit in Rule 32(a)(7)(B), because, exclusive of the portions of the documents exempted by Rules 32(f), this document contains 11,708 words.

2. Further, this document complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportional-width typeface using Microsoft Word 2016 in 14-point Century Schoolbook.

**WARD AND SMITH, P.A.**

*/s/ Chris Edwards*
Christopher S. Edwards

## Certificate of Filing and Service

I hereby certify that on August 17, 2026, I caused the foregoing to be electronically filed with the Clerk of this Court using CM/ECF, which will send notifications of such filing to all registered participants.

**WARD AND SMITH, P.A.**

*/s/ Chris Edwards*
Christopher S. Edwards